González Román, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Mediante el presente recurso, I.M.I. Acquisitions of Puerto Rico Corporation y el Hospital Auxilio *1160 Mutuo, Inc. (el Auxilio Mutuo), solicitan la revocación de una resolución dictada por el Departamento de Salud del Estado Libre Asociado de Puerto Rico (el Departamento), el 15 de abril de 1997 en la cual se otorga el Certificado de Necesidad y Conveniencia (CNC) solicitado por M. Pavía Fernández, Inc. (el Hospital Pavía) para establecer y operar unas facilidades de servicio de Resonancia Magnética (MRI, por sus siglas en inglés), dentro de las facilidades de dicho hospital, ubicado en Santurce.
El Auxilio Mutuo plantea cinco (5) señalamientos de error. Fundamentalmente, los primeros cuatro (4) tienen como objeto cuestionar la interpretación que del Reglamento del Secretario de Salud Núm. 56 (el Reglamento) hizo el Departamento. De éstos, los primeros dos están estrechamente relacionados: impugnan la conclusión de la Oficial Examinadora con respecto al deber del Departamento de notificar a las partes afectadas en una solicitud de CNC. 
La discusión de estos señalamientos discurrirá más efectivamente si se hace dentro de la narración de los hechos que originan la controversia. Toda vez que las conclusiones de hechos de la Oficial Examinadora no han sido objetadas, para efectos de nuestra Sentencia, tomaremos los eventos según surgen del Informe de la Oficial Examinadora. Como ya hemos adelantado, el Hospital Pavía presentó una propuesta ante la Secretaría Auxiliar para la Reglamentación y Acreditación de Facilidades de Salud (SARAFS) solicitando el otorgamiento de un CNC para la instalación de una unidad de MRI en sus facilidades ubicadas en la Calle Asia Núm. 1462, en Santurce. 
El 8 de junio de 1996, mediante edicto, el Departamento publicó un Aviso de Solicitud a tales efectos. Posteriormente, el 30 de julio de 1996, el Departamento procedió a notificar a las siguientes personas y/o instituciones que prestan servicios similares dentro del área de interés: Dr. Frank Kolodziej (Somascan); Dr. José N. Lázaga (Central CT and Radiology Center); Hospital Auxilio Mutuo; Dr. Luis E. Bonnet; Dr. Emilio Torres Reyes; Hospital Presbiteriano, por conducto de su Director Ejecutivo, Sr. Iván Millón; Dr. Moisés Esquenazi; Dr. Julio Calcaño (Nuclear Magnetic Resonance of P.R).; Dr. José M. Rivera Arroyo (Plaza Carolina X-Ray Center); Centro de Resonancia del Noreste; Dra. Diana Fernández (Centroimágenes) y al Dr. Oscar Crespo. Además, consta en autos que el 25 de febrero de 1997, el Departamento de Vistas Administrativas del Departamento de Salud cursó notificaciones a las siguientes personas e instituciones: Department of Health and Human Services, Financing Administration; Dr. Julio L. Rojo, Pres., Sociedad Radiológica de Puerto Rico, Sec. de Radiología, Asociación Médica de Puerto Rico; Dr. James A. Palmer, Director, B.A. (sic) Medical Center; Sr. Frank Fournier, Representante de HCFA; Administrador, Hospital Sub-Regional de Fajardo; Administrador, Hospital de Area de Carolina; Adm., Hospital Industrial; Adm., Hospital Oncológico del Centro Médico; Adm., Hospital Pediátrico Universitario; Adm., Hosp. Universitario, Centro Médico; Adm., Hospital Municipal de San Juan; Adm., Centro Cardiovascular de Puerto Rico y del Caribe; Dr. Frank Kolodziej. De todos estos, sólo comparecieron oportunamente los recurrentes de epígrafe: IMI (corporación foránea que es dueña y opera las facilidades de MRI de San Juan (MRI) y el Auxilio Mutuo, además del Dr. Oscar Crespo. 
El 5 de diciembre de 1996, el Departamento notificó a las partes comparecientes el señalamiento de vista para el 21 de enero de 1997. El 14 de enero de 1997, las partes se reunieron para la preparación del proyecto de Orden de Conferencia con Antelación a la Vista. La reunión culminó con una solicitud de la parte opositora para que SARAFS ordenara la suspensión de los procedimientos de vista. Dicha solicitud fue declarada sin lugar, por lo que el Axilio Mutuo e IMI acudieron en recurso de certiorari y Solicitud en Auxilio de Jurisdicción ante este Tribunal. El 17 de enero de 1997 dictamos orden dejando sin efecto el señalamiento. Posteriormente el recurso de certiorari fue desestimado por académico a solicitud del Hospital Pavía, toda vez que la vista en su fondo fue reseñalada para los días 13 y 14 de marzo de 1997.
A la misma vez que presentaban el recurso ante este Tribunal, IMI y el Auxilio Mutuo presentaron ante SARAFS las mociones que motivaron los señalamientos de error que estamos discutiendo. Una de las mociones era una solicitud de citación de testigos y la otra una solicitud de desestimación por falta de notificación a todas las personas afectadas. La Oficial Examinadora de la División de Vistas Administrativas del Departamento de Salud (la Oficial Examinadora), declaró sin lugar la primera moción y concedió la segunda, modificándola. Del Informe de la Oficial Examinadora surgen detalladamente los fundamentos de su decisión. Veamos.
*1161 Los opositores solicitaron que se citara a las siguientes personas: Hospital de Veteranos; Centro Radiológico del Noreste; Instituto Central de Diagnóstico (Hospital Oncológico); Plaza Carolina X-Ray Center; Nuclear Magnetic Resonance Center; Centro Tomográfico de Puerto Rico; The Radiology Institute; Central CT & Radiology Center y Somacan, Inc. Las partes opositoras, alegadamente, tenían interés en que estas instituciones informaran sobre la experiencia de utilización de sus facilidades y sobre su capacidad para absorber la demanda potencial.
La Oficial Examinadora denegó tal solicitud y concluyó que, a base de la lectura integrada de las guías generales y los criterios específicos aplicables a los servicios de MRI, éstas no requieren que se aporte prueba sobre la capacidad de las facilidades circundantes para absorber una demanda potencial. Las guías generales, leídas en conjunto con los criterios específicos, le indican al Departamento que lo importante es evaluar la seguridad del usuario y el entrenamiento de los médicos y técnicos de la facilidad en cuestión.
Examinamos el Reglamento, particularmente las secciones que establecen las guías generales y los criterios específicos de una solicitud de MRI. De ninguna de estas secciones surge la obligación de la Secretaria de Salud de tomar en consideración la capacidad de las facilidades existentes para absorber la demanda potencial o real de otras facilidades. Las guías generales, leídas en conjunto con los criterios específicos, le indican al Departamento que lo importante es evaluar la seguridad del usuario y el entrenamiento de los médicos y técnicos de la facilidad en cuestión. Una vez una agencia ha promulgado un reglamento, viene obligada a observarlo estrictamente y no queda a su soberana voluntad reconocer o no los derechos que ella misma ha reconocido. García Cabán v. U.P.R., 190 D.P.R. 167 (1987). Resolvemos que no se cometió el primer señalamiento.
De otro lado, tenemos que, con relación a la Moción Conjunta en Solicitud de Desestimación por Falta de Notificación a Todas las Personas Afectadas, el Departamento concedió parcialmente la petición de las partes opositoras e incluyó en la notificación a las siguientes dependencias: Centro Médico, a los hospitales públicos del área de San Juan, y al Hospital de Veteranos. Los opositores plantearon que debía notificarse a una serie de instituciones o personas encuadradas en diversas categorías. La primera categoría era la de las facilidades de salud localizadas en el área de servicio del proyecto que proveen servicios similares. Alegaron que el término "facilidades de salud" debía entenderse de forma amplia, así como el término "servicios similares", y argumentaron al Departamento que debía haberse notificado a todas las facilidades radiológicas ubicadas en todos los centros de salud, oficinas particulares públicas y privadas, y centros de radiología independientemente de que se prestaran en ellas servicios de MRI. El Departamento concluyó que siempre ha considerado que "servicios similares" en el contexto de MRI se refiere únicamente a las facilidades que prestan o tienen la intención de prestar el servicio de MRI, lo cual concluimos es correcto. Veamos lo que dispone el Reglamento al respecto. El Artículo IV sobre el Procedimiento para Recibo y Evaluación de Solicitudes dispone que:

"1. Radicación de Solicitudes

a) Antes de radicar una solicitud para certificado de necesidad y conveniencia, el proponente deberá notificar por escrito al Secretario su intención de llevar a cabo la acción para la cual se solicita el certificado, no más de treinta (30) días de antelación a la fecha en que habrá de radicar la solicitud para obtener un certificado de necesidad y conveniencia o una exención del requisito del certificado.

2. Notificación sobre solicitudes recibidas.
b) Dentro de los treinta (30) días siguientes del recibo de la solicitud, el Secretario o su representante autorizado notificará mediante carta circular, por correo, a las personas afectadas y al público en general." (Subrayado nuestro).
El Artículo II, define como "personas afectadas":

"Cualquier persona directamente afectada por la decisión del Secretario respecto a una solicitud de exención o certificado de necesidad y conveniencia, incluyendo:

*1162
a)El solicitante o proponente.

b) Las facilidades de salud localizadas en el área de servicio del proyecto que proveen servicios similares al propuesto.

c) Las facilidades de salud que previo al recibo de la solicitud bajo consideración, han informado por escrito su intención de prestar servicios similares en el futuro.

d) Cualquier agencia que establezca tarifas a las facilidades de salud en Puerto Rico." (Subrayado nuestro).
El Auxilio Mutuo alega que el término "servicios similares" tiene que entenderse como que engloba a todos los servicios de radiología, esto debido a que el inciso 16 del Artículo VI menciona a estos servicios y añade como apostilla final "cualquier otro equipo similar". Veamos dicho Artículo, en lo pertinente:
"16. Facilidades Radiológicas - Facilidad de salud dedicada al diagnóstico de enfermedades mediante el uso de equipo de rayos x, sonografía, tomografía computadorizada o cualquier otro equipo similar" (Subrayado nuestro).
De allí, el Auxilio Mutuo deduce que todas las facilidades de rayos x, sonografía, tomografía computadorizada, y "cualquier equipo similar", debían de haberse citado a la vista en cuestión. No tiene razón. Es preciso ver las cosas en su justa perspectiva. El Reglamento establece que una vez presentada la solicitud, el Secretario de Salud notificará a las personas afectadas, es decir, cualquier persona directamente afectada por la decisión del Secretario. La parte del Reglamento que define las facilidades radiológicas como una facilidad de salud dedicada al diagnóstico de enfermedades mediante el uso de equipo de rayos x o cualquier otro equipo similar, es precisamente eso, una definición inmersa en la sección sobre Criterios Específicos. Por lo tanto, esta sección del Reglamento y la apostilla en controversia no tienen el efecto de alterar, ampliar o de ninguna otra forma modificar lo dispuesto por el Artículo relativo a la notificación. El Artículo es claro; se notificará la solicitud a las "personas afectadas" que son "las personas directamente afectadas”. Visto el Reglamento en todas sus partes, no se desprende del mismo que sea necesario ampliar el significado de las frases "servicios similares" o personas "directamente afectadas". Las guías generales y los criterios específicos provistos por el Reglamento son suficientes para que el Departamento pueda identificar o determinar la necesidad y conveniencia de una solicitud para establecer unas facilidades de MRI. No se cometió el segundo señalamiento de error.
Procede discutir ahora el tercer y cuarto señalamiento. Ambos, al igual que los anteriores, coinciden en el propósito de cuestionar la interpretación que del Reglamento hizo el Departamento. Nuestro análisis de las controversias, en todo momento se conduce conforme a la norma reiterada de que la interpretación administrativa de un estatuto por el organismo encargado de velar por su cumplimiento merece gran respeto y deferencia por los tribunales. Alvarez Cintrón v. Junta de Directores del Condominio Villa Caparra Executive, _ D.P.R. _ (1996), 96 J.T.S. 70; ARPE v. Ozores Pérez, 116 D.P.R. 816, 821 (1986). Las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, además de que tienen a su favor una presunción de regularidad, que debe ser rebatida por aquél que impugna sus determinaciones. Su revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó abuso de discreción. Fuentes v. ARPE, _ D.P.R. _ (1993), 93 J.T.S. 165; Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
El Auxilio Mutuo alega que la Secretaria de Salud erró al concluir que la solicitud del Hospital Pavía cumplió con todos los criterios específicos para facilidades de MRI establecidos en el Reglamento 56. Sostienen que fue insuficiente la prueba aportada por el Hospital Pavía a los efectos de establecer que cumplía con los requisitos reglamentarios, a saber: 1) preparación del personal a cargo de la interpretación y producción de los estudios de imágenes del equipo; 2) contratos con profesionales de la salud que estarán disponibles en la propia unidad de MRI o en una facilidad accesible a ésta; y, 3) estudio de impacto ambiental.
*1163 Sobre el primer renglón, el inciso 16(3) del Reglamento establece que "[tjoda solicitud de certificado de necesidad y conveniencia para operar el equipo de resonancia magnética (MRI) deberá estar acompañada de prueba fehaciente de que el profesional a cargo de la interpretación y producción de los estudios de imágenes del equipo posee entrenamiento mínimo". (Subrayado nuestro). Surge de autos que el Hospital Pavía presentó al Departamento Certificación de la American Board of Radiology acreditando al Dr. Manuel Pérez como diplomado de dicho Colegio. Además, del testimonio del Dr. Pérez, el Hospital Pavía presentó en evidencia el testimonio del Dr. Bernardo Marqués, quien declaró tener estudios avanzados especializados y experiencia en la realización de imágenes por medio de resonancia magnética. El Auxilio Mutuo sostiene que de los anejos que acompañan la solicitud del Hospital Pavía no surge "evidencia fehaciente" en cuanto al entrenamiento o experiencia de los profesionales a cargo de las facilidades de MRI. Según éstos, la solicitud del Hospital Pavía, al no incluir todos los documentos requeridos, no quedó perfeccionada. Alegan que suplir cierta información mediante testimonio no subsana tal omisión y no constituye "evidencia fehaciente ".
Primero, debemos aclarar que el proceso de solicitud de CNC no es una gestión de un sólo evento. Es decir, comienza con la presentación de una solicitud formal, la cual debe ir acompañada de ciertos documentos y, posteriormente, el trámite conlleva otras gestiones, tales como la celebración de vistas. Durante estas etapas la parte proponente puede, y tiene la obligación de presentar evidencia que le acredite a ser acreedora de la licencia solicitada. El no presentar todos los documentos en la primera gestión no descalifica automáticamente al solicitante. El proceso comienza con una documentación básica, posteriormente el proponente puede completar lo solicitado presentando "evidencia fehaciente" de que cumple con los requisitos de otorgación de la licencia. La falta de presentación de evidencia fehaciente descalificaría a un proponente, no la presentación escalonada de la misma.
En el caso de autos, el Hospital Pavía presentó evidencia documental para acreditar que el Dr. Pérez cumple con los requisitos requeridos para operar un equipo de MRI. Además, el testimonio prestado por éste y por el Dr. Marqués constituye evidencia fehaciente conforme al Reglamento. El Reglamento no define lo que constituye "evidencia fehaciente”. Según lo define el Diccionario de Derecho de Rafael de Pina Vara, Decimoprimera Edición, Editorial Porrúa, México, 1983, el término fehaciente describe al "[tjestimonio o documento que hace fe, es decir, que es eficaz para la demostración de la existencia de un hecho o acto". Aplicando, entonces, esta definición a nuestro ordenamiento legal probatorio, evidencia fehaciente es evidencia admisible. Como sabemos, la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que por ley otra cosa se disponga. Regla 10(D) de Evidencia, 32 L.P.R.A. Ap. IV. 
En ausencia de evidencia contradictoria, los testimonios de los Doctores Pérez y Marqués, conjuntamente con sus .certificaciones y el résumé de cada uno constituyen prueba fehaciente de su capacidad profesional y técnica para operar y administrar la operación de equipos de MRI.
El segundo renglón controvertido en el tercer señalamiento es el relativo a la evidencia de contratos con profesionales de la salud que estén disponibles en la propia unidad de MRI o en una facilidad accesible a ésta. El Auxilio Mutuo alega que el Hospital Pavía incumplió con este requisito al no presentar tales contratos. De autos surge, que el Hospital Pavía presentó cartas de intención de varios especialistas que han manifestado su disponibilidad para prestar servicios asociados o aliados al servicio de MRI. Concluimos que tales cartas de intención cumplen con el requisito del Departamento. Tomamos conocimiento judicial de que el Departamento, en otras ocasiones, ha acogido dichas cartas de intención como el equivalente funcional de un contrato ante el entendido de que no se debe exigir una contratación formal si el servicio aún no existe. Debe tenerse presente que bajo la Regla 11 de las de Evidencia, 32 L.P.R.A. Ap. IV, es posible tomar conocimiento judicial de los procedimientos habidos y de la sentencia que se dictó en otra causa seguida ante el mismo tribunal, y hasta en otro tribunal de la misma jurisdicción. Por tal razón, concluimos que, en este caso, también son válidas las cartas de intención presentadas por el Hospital Pavía. Así, también, lo son las cartas de los doctores que al momento de la solicitud, son empleados del Hospital Pavía. No se cometió el señalamiento.
Por último, todavía dentro de la discusión del tercer señalamiento, concluimos que no erró la Oficial Examinadora al concluir que el equipo de MRI no produce radiación ionizante. Examinados *1164 los autos, concluimos que la decisión del Departamento se basó en evidencia sustancial, por lo que su conclusión no es arbitraria ni caprichosa. Murphy Bernabé, supra. La prueba demostró que las máquinas de este tipo no utilizan isótopos nucleares para su funcionamiento ni emiten radiación ionizante, conforme surge del Informe Inicial de SARAFS, firmado por el Técnico de Evaluación, Sr. Harry Santiago Santiago. Exh. VI, pág. 65 del Apéndice de los recurrentes así como del testimonio parcial del Dr. Bernardo Marqués del 13 de marzo de 1997, Exh. 21, págs. 560-561 del apéndice del Hospital Pavía.
El próximo señalamiento tiene que ver con unas expresiones de la Oficial Examinadora vertidas en su Informe. Esta expresó que, a su entender, "el Departamento de Salud cumple en forma cabal su encomienda de entender sobre la conveniencia y necesidad del servicio sin necesidad de aplicar a la propuesta los criterios poblacionales, censales y de número de estudios que son aplicables a los casos de CT, pero no a los de MRI”. El Auxilio Mutuo alega que tal conclusión es errónea. Antes de entrar a discutir este señalamiento, queremos llamar la atención en el sentido de que las expresiones de la Oficial Examinadora que aquí son impugnadas, aunque están contenidas en su Informe, no surgen de las determinaciones de hechos. Tales expresiones surgen de los Antecedentes Procesales del Informe, y específicamente dentro del contexto de una argumentación de la Oficial Examinadora distinguiendo la controversia del caso de autos de la controversia en otro caso, a saber: Metropolitan CT Center, Inc. v. Secretario de Salud de Puerto Rico, Núm. KLCE-95-00379. No obstante, si la Oficial Examinadora expresó que no es necesario aplicar a la propuesta los criterios poblacionales, censales y de número de estudios que son aplicables a los casos de CT es porque el Reglamento no aplica tales factores a la solicitud de MRI.
El Artículo VI del Reglamento establece los criterios específicos que el Secretario utilizará para evaluar una solicitud de CNC. Específicamente, el inciso (16) de dicho Artículo se refiere a las Facilidades Radiológicas. Distingue seis (6) tipos de facilidades dentro de este renglón, a saber: 1) Radiología Diagnóstica Convencional; 2) Tomografía Computadorizada; 3) Resonancia Magnética; 4) Microscopía Electrónica; 5) Acelerador Lineal; y 6) Litrotractor Extracorpóreo (Lithotripter). Cada uno de estas facilidades tiene sus requisitos específicos. A modo de ejemplo, apuntamos que para las facilidades de Radiología Diagnóstica Convencional el Reglamento establece la norma de una máquina radiológica por cada veinte mil (20,000) habitantes en un municipio. Para las facilidades de Tomografía Computadorizada la norma es de trescientos mil (300,000) habitantes por facilidad, y un millón (1,000,000) para el Acelerador Lineal. En el caso del MRI, el Reglamento no establece ninguna norma en particular. El Departamento concluyó que los factores más relevantes a considerar en estos casos (MRI) son la seguridad del usuario y el entrenamiento de los médicos y técnicos de la facilidad en cuestión. Entendemos que dicha conclusión no es arbitraria ni caprichosa, mucho menos contraria al Reglamento. Abunda a nuestra decisión el hecho de que la determinación del Departamento toma en consideración el propósito de la Ley Núm. 2, supra, de balancear el interés de los pacientes e instituciones de salud y promover el más adecuado desarrollo de un sistema de salud. Ciertamente, el Hospital Pavía, como hospital terciario, necesita el servicio de MRI para complementar sus servicios médicos. No se cometió el error señalado.
Por último, en el último señalamiento de error el Auxilio Mutuo impugna cuatro (4) aspectos relacionados con la vista celebrada por el Departamento. Los dos primeros tienen que ver con el modo en que la Oficial Examinadora condujo la vista. Alegan que limitó irrazonablemente el tiempo de los contrainterrogatorios de las partes opositoras y que alteró irrazonablemente el orden de la prueba que los opositores entendían que era correcto.
Examinadas las alegaciones de las partes, entendemos que la determinación de la Oficial Examinadora de limitar el tiempo de los contrainterrogatorios no fue arbitraria, toda vez que dicha limitación aplicó también a la parte proponente en su examen directo. A igual conclusión llegamos con respecto al siguiente argumento del Auxilio Mutuo. El Oficial Examinador es la persona a cargo de la celebración de la vista. En ese sentido tiene amplia discreción para alterar el orden de la presentación de la prueba.
Los otros dos asuntos planteados en el último señalamiento de error tienen que ver con la prueba presentada. Primero, alega el Auxilio Mutuo que la Oficial Examinadora erróneamente admitió en evidencia un documento que fue presentado como un subterfugio para tratar de cumplir con uno de los *1165 criterios específicos del Reglamento. Se refiere a la licencia expedida al Hospital Pavía por la "Nuclear Regulatory Commission", que durante el testimonio del Dr. Marqués fue presentado para evidenciar que el Hospital Pavía maneja un Departamento de Medicina Nuclear y que tiene licencia para manejar radioisótopos nucleares. Según el Auxilio Mutuo, es improcedente que la Oficial Examinadora también haya utilizado dicho documento para concluir que la parte proponente cuenta con el entrenamiento y capacidad para manejar radiación ionizante o radioisótopos, y para acreditar las alegadas medidas de protección ambiental que ya han sido adoptadas en el hospital. No tiene razón. Como señaláramos anteriormente, el proceso de solicitud no se cumple en un sólo acto, pues la evidencia presentada en la vista complementa la aportada con la solicitud. Por esta razón concluimos que no se cometió el recién discutido señalamiento. Por los mismos fundamentos concluimos que tampoco se cometió el próximo señalamiento de error relativo a si "[a]busó de su discreción el Departamento de Salud al intervenir para tratar de subsanar mediante prueba fehaciente que acreditara el cumplimiento de los criterios específicos". En adición, este último señalamiento es repetitivo. Dicho asunto ya se discutió anteriormente en esta sentencia.
Por los fundamentos antes expresados, se deniega la revisión solicitada.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98DTA105
1. "A. Erró la Secretaria de Salud al no desestimar la solicitud de la parte proponente por falta de notificación a todas las personas afectadas.
B. Erró la Secretaria de Salud al resolver que la citación de los testigos requerida por las opositoras no procedía en derecho."
2. La propuesta fue presentada el 31 de mayo de 1996.
3. El Dr. Torres Reyes recibió dos notificaciones; una dirigida a San Juan MRI, en la Ave. Fernández Juncos y otra al Centro de Resonancia del Noreste en Carolina.
4. Esta notificación suscitó un incidente procesal colateral. El Hospital Presbiteriano tiene en sus facilidades una unidad MRI que es operada por el Centro Tomográfico de Puerto Rico, Inc., la cual es una corporación separada del Hospital y dirigida por el Dr. Frank Kolodziej. Las partes opositoras plantearon que no se había notificado a dicho Centro Tomográfico, toda vez que se notificó a la entidad hospitalaria donde ubica el MRI, y no al Centro. El Dr. Kolodziej, en representación del Centro Tomográfico, remitió a SARAFS comunicación escrita fechada 16 de enero de 1997, en la cual indicaba que recibió notificación de la Propuesta y no tenía oposición a la misma.
5. Exhibit Núm. 2, pp. 2-13 del escrito en oposición presentado por el Hospital Pavía.
6. A la página 2 del Informe del Oficial Examinador.
7. KLRA-97-00037.
8. A la página 31, Exhibit 5 del Escrito en Oposición presentado por el Hospital Pavía.
9. El Dr. Pérez, según la transcripción de su declaración ante SARAFS (Ex. 18, pp. 461-479, 515-526), será la persona a cargo de dirigir la unidad de resonancia magnética hasta que uno o más miembros de su grupo estuvieran en condiciones de poderlo hacer.
*1166 10. En los procesos ante las agendas administrativas las Reglas de Evidencia no serán de estricta aplicabilidad, salvo los conceptos generales.
11. Exhibit Núm. 8, pp. 48-56 del Escrito en Oposición del Hospital Pavía.
12. Exhibit 10, a la pág. 206 del Escrito en Oposición del Hospital Pavía.
13. Los tribunales podrán tomar conocimiento judicial en cualquier etapa de los procedimientos, incluyendo la etapa apelativa. Regla 11(D) de Evidencia, 32 L.P.R.A. Ap. IV.
14. A la página 5.